# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| HAROLD WAYNE NICHOLS #146457 and JONATHAN STEPHENSON #140145, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 3:21-cv-00698 ) Judge Trauger |
| TONY PARKER, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM

Harold Wayne Nichols and Jonathan Stephenson, inmates on death row at Riverbend Maximum Security Institution (RMSI) in Nashville, Tennessee, filed a pro se civil rights complaint under 42 U.S.C. § 1983, alleging a lack of meaningful law library access. (Doc. No. 8.)[1] The plaintiffs request the appointment of counsel (*id.* at 45–46; Doc. No. 9) and immediate injunctive relief. (Doc. No. 8 at 46–48.) The plaintiffs also seek to proceed without prepaying fees and costs. (Doc. Nos. 2–5.) This action is before the court for an initial review under the Prison Litigation Reform Act. For the following reasons, this action will be dismissed.

## I.     Application to Proceed as a Pauper

The court may authorize a prisoner to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Where multiple prisoners "join in the prosecution of a case, each prisoner [is] proportionally liable for any fees and costs that may be assessed." *In re Prison Litigation Reform Act*, 105 F.3d 1131, 1137–38 (6th Cir. 1997). Because there are two plaintiffs in this case, each plaintiff is responsible for half of the $350 filing fee, or $175. From the financial documentation

---

[1] The plaintiffs submitted two copies of the same complaint. (*Compare* Doc. No. 1, *with* Doc. No. 8.)

submitted by Plaintiff Nichols (Doc. Nos. 2, 4) and Plaintiff Stephenson (Doc. Nos. 3, 5), it appears that neither plaintiff can pay his share of the filing fee in advance without undue hardship. Accordingly, each plaintiff will be granted pauper status and assessed $175 as directed in the accompanying order. 28 U.S.C. § 1915(b)(1).

**II.     Initial Review**

The court must dismiss the complaint if it is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); 42 U.S.C. § 1997e(c)(1). The court must also liberally construe pro se pleadings and hold them to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**A.     Allegations**

The court has liberally construed the complaint and established the following summary of factual allegations for the purpose of conducting an initial review.

**1.     Access to Law Library**

Tennessee Department of Correction (TDOC) policy provides that inmates "shall be afforded access to the library or library services at specified times," that "[e]ach institution shall be responsible for developing its own procedures to satisfy library service requirements," and that "[l]ibrary hours should not conflict with program and/or work requirements." (Doc. No. 8 at 8, 28.) TDOC policy also provides that each facility's warden "shall develop a written policy to ensure that all inmates in segregation . . . are afforded access to library services." (*Id.* at 8.)

Death row inmates are housed in Unit 2 at RMSI. (*Id.* at 17.) RMSI does not allow these inmates access to the main law library but maintains a separate library for them in building 2A. (*Id.* at 26.) RMSI policy provides that four inmates at a time may utilize the 2A law library "as

2

scheduled by the Unit Manager." (*Id.* at 12, 25.) As alleged by the plaintiffs, RMSI policy also provides that the 2A library "shall be open daily from 12:30 pm to 8:30 pm" (*id.*)—a total of 56 hours per week.[2] RMSI policy provides that inmates seeking 2A library access must submit a request "one (1) week prior to the first date requested" and "select one time period (12:30 pm to 4:00 pm or 5:30 pm to 8:30 pm) for access." (*Id.* at 26–27.) Only death row inmates are required to request library access a week in advance. (*Id.* at 40.)

Actual practice deviates from these law library policies in several ways. First, because Unit 2 is understaffed and overcrowded, the officer designated to work the 2A library is often pulled to work elsewhere, and the library is closed. (*Id.* at 10–11, 43, 45.) Second, the 2A library is never open the required "56 hours per week" because RMSI officials consider "37.5 hours as [the] maximum required." (*Id.* at 22–23, 26.) Third, to meet the "so-called minimum 37.5 hours," the library will often open from 7 or 8:00 am to 12:00 pm, but that time slot is not among the options that inmates may choose when they request access in advance. (*Id.* at 27–28.) And fourth, Plaintiff Nichols' work assignment conflicts with the 2A library's morning hours. (*Id.* at 28.) Moreover, the plaintiffs allege that requiring death row inmates to request library access a week in advance does not allow them sufficient time to research and participate in their cases. (*Id.* at 39–40, 42.)

In the past, the 2A law library was considered a mandatory post, such that the assigned officer could not be pulled for any reason. (*Id.* at 41.) That is no longer the case, although the main library has an assigned officer "whose job it is to stay in the library and keep it open during the hours it is required to be open." (*Id.* at 40–41.)

---

[2] Contrary to the plaintiffs' allegation, however, a copy of the policy attached to the complaint does not state that the 2A library "shall be open daily," but instead states that it "shall be open Monday thru Friday" and "maybe opened on Saturday or Sunday if the staff is available." (Doc. No. 1-2 at 4.)

3

Tony Mays, the RMSI Warden, created and is responsible for enforcing RMSI's 2A law library policies, but he has failed to supervise their enforcement and he has instructed John or Jane Doe officers to close the 2A law library. (*Id.* at 4–6, 9, 12, 14, 18.) The TDOC Commissioner—including the recently retired Tony Parker and the current or interim Commissioner Jane or John Doe—failed to inspect RMSI and ensure that Warden Mays followed TDOC and RMSI policy. (*Id.* at 3–4, 8–9.) John or Jane Doe shift commanders instructed officers to close the library. (*Id.* at 5–6, 15, 18.) Ernest Lewis, Warden of Security at RMSI, told officers to call him if shift commanders did not provide someone to work the 2A law library, but Lewis failed to act. (*Id.* at 15.) Michael Keys, Warden of Treatment and Unit 2 Manager, directed officers to either not open the library or cut hours short. (*Id.* at 16.) Michael Firestine and Robert Davis, the respective former and current Unit 2 Managers, have approved the plaintiffs' law library access, but they failed to ensure that the library is open during the approved times. (*Id.* at 17.)

The plaintiffs filed several grievances regarding their access to the 2A law library. After a hearing on one of the grievances, the board "agreed with grievants that the law library for death row should be staffed and opened daily as in policy." (*Id.* at 7, 13, 21–23, 41.) Likewise, in response to a grievance from Plaintiff Nichols, Nichols met with Unit Manager Firestine and Sgt. Simmons, and Simmons agreed that the library was not being opened according to policy. (*Id.* at 22.) Simmons cited "short staffing" as the reason, and Firestine and Simmons told Nichols "they would improve at making sure the library in 2A was operated according to policy." (*Id.*) Firestine and Simmons, however, have not taken any actions to correct these issues. (*Id.* at 23.) Warden Mays also violated TDOC policy by failing to investigate these grievances (*id.* at 13–14), and both Mays and the TDOC Commissioner failed to correct these issues. (*Id.* at 7, 10, 13.)

### 2. Adequacy of Law Library

TDOC policy requires death row inmates "seeking to research any information of [their] case[s]" to "fill out a form" listing the citation for each case they would like to review, and the form is given to another inmate to compile the requested cases. (*Id.* at 36–37.) This policy applies only to death row inmates. (*Id.* at 37.) However, the plaintiffs maintain that they cannot list case citations without having the opportunity to do legal research, and that forcing only death row inmates to "turn their case over to another inmate" does not protect sensitive case-specific information or allow the plaintiffs to meaningfully assist in their own cases. (*Id.* at 37–39.)

The plaintiffs also have medical conditions[3] that make it more difficult for them to read or write. (*Id.* at 30.) And the library has limited, outdated legal materials, with no access to an electronic legal research service. (*Id.* at 30–31, 36.)

### 3. Requested Relief

The plaintiffs request that the 2A law library (1) be open during the hours designated by policy, (2) carry updated legal research materials, (3) provide access to Westlaw and LexisNexis, and (4) provide newer computers or allow the plaintiffs to purchase their own laptop computers with thumb drive or CD storage capabilities.[4] (*Id.* at 35–36.) Until these changes have been made,

---

[3] Plaintiff Nichols is a 60-year-old man with "ocular hypertension," a condition that "makes the pressure in his eyes build when trying to focus over an extended period of time." (Doc. No. 8 at 30.) Plaintiff Stephenson has gout in his hands, "making it impossible to write more than a few lines at a time before his hands swell." (*Id.*)

[4] The complaint alleges that Plaintiff Stephenson "has a Court Order ordering Defendants to allow [him] to purchase a personal lap-top for work on his legal case but Defendants will not honor the Court Order and his attorneys will not assist him in enforcing the Court Order." (Doc. No. 8 at 30.) The court takes judicial notice that Stephenson's federal habeas corpus petition is currently pending in the Eastern District of Tennessee. *See Stephenson v. Mays*, No. 3:14-cv-00414 (E.D. Tenn.). In September 2015, the federal habeas court ordered the RMSI Warden to "permit [Stephenson] to possess and use a computer with the appropriate word processing and printing capabilities, as well as storage devices, for the purpose of communicating with and assisting his counsel in his federal habeas proceedings." *Id.*, Doc. No. 17 at 2 (E.D. Tenn. Sept. 23, 2015). That order "has been the subject of ongoing litigation in [the] case virtually since its entry," *see id.*, Doc. No. 131 at 2 (E.D. Tenn. Nov. 30, 2018), and the case includes an unresolved

the plaintiffs request an immediate injunction barring the execution of all death row inmates in Tennessee.[5] (*Id.* at 46–48.) The plaintiffs also request a declaratory judgment. (*Id.* at 48.)

**B.     Legal Standard**

To determine whether the complaint fails to state a claim on which relief may be granted, the court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

**C.     Discussion**

The plaintiffs bring this action under Section 1983, asserting claims under the First, Fifth, Eighth, Thirteenth, and Fourteenth Amendments. (*See* Doc. No. 8 at 3, 44–45.) Throughout the complaint, the plaintiffs also allege violations of prison policy and state law. (*See id.* at 8–14, 17–18, 20, 22–23, 26–28, 44, 46.) As a threshold matter, however, Section 1983 claims "can only be

---

issue of whether Stephenson forfeited any interest in possessing a laptop "through his own non-compliance with the order." *Stephenson v. Inglis*, No. 3:17-cv-00497, Doc. No. 16 at 2 (E.D. Tenn. Jan. 1, 2021). Stephenson filed a pro se civil rights case asserting that his laptop was taken in violation of that order and his due process rights, and the Eastern District stayed the civil rights case pending the resolution of the laptop issue in the habeas case. *Id.* at 1–2.

[5] The court takes judicial notice that neither plaintiff has an execution date currently set. Plaintiff Stephenson has never had an execution date set, and Plaintiff Nichols was last set to be executed on August 4, 2020. *See Nichols v. Parker, et al.*, 3:20-cv-00566, Doc. No. 6 at 1 (M.D. Tenn. July 1, 2020). Governor Bill Lee granted Nichols an executive reprieve from execution through December 31, 2020, and the Tennessee Supreme Court has not acted to set a new execution date for Nichols since the expiration of the reprieve. *Id.*, Doc. No. 33 at 1 (M.D. Tenn. Aug. 12, 2020).

6

brought for 'deprivation of rights secured by the constitution and laws of the United States.'" *Laney v. Farley*, 501 F.3d 577, 580–81 (6th Cir. 2007) (citation and footnote omitted). Thus, the plaintiffs fail to state an independent claim based on a violation of prison policy. *Id.* at 580 n.2 (citation omitted) ("[A] § 1983 claim may not be based upon a violation of state procedure that does not violate federal law."). And as explained below, the plaintiffs also fail to state a claim under the cited constitutional provisions. The court, therefore, will decline to exercise supplemental jurisdiction over any independent state law claims. *See* 28 U.S.C. § 1367(c)(3).

### 1. Miscellaneous Claims

Several constitutional rights invoked by the plaintiffs are ill-fitted for the substance of their allegations. First, the plaintiffs assert a claim under the Free Speech Clause of the First Amendment. (Doc. No. 8 at 7–8, 11, 15–18, 20, 28.) But the right to free speech is analytically distinct from the right to access the courts. *Thaddeus-X v. Blatter*, 175 F.3d 378, 391–93 (6th Cir. 1999) (discussing the distinction). And it is unclear how the plaintiffs' allegations of an inaccessible and inadequate law library implicate their free speech rights in a way that is distinct from their right to access the courts. Moreover, "[t]o establish standing for a free-speech claim, the [p]laintiffs generally must show that 'the rule, policy or law in question has explicitly prohibited or proscribed conduct on the[ir] part.'" *Phillips v. DeWine*, 841 F.3d 405, 415 (6th Cir. 2016) (quoting *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 711 (6th Cir. 2015)). And the plaintiffs "have not claimed that they hold any information" that the defendants or the law library policies at issue "prevent[] them from disclosing." *See id.* at 415–16 (rejecting free-speech challenge by Ohio death row inmates to state statutory scheme concerning confidentiality of information related to lethal injection). The complaint therefore does not support a free-speech claim.

The plaintiffs also bring a claim under the Fifth Amendment's Due Process Clause. (Doc. No. 8 at 7–8, 11, 15–18, 20, 45.) But the defendants in this case are state officials, and the Fifth Amendment's due process guarantee "applies to federal, not state, officials." *Palmer v. Schuette*, 768 F. App'x 422, 426–27 (6th Cir. 2019) (citing *Scott v. Clay Cnty.*, 205 F.2d 867, 873 n.8 (6th Cir. 2000)). Accordingly, the plaintiffs fail to state a Fifth Amendment claim.

Next, the plaintiffs bring a claim under the Cruel and Unusual Punishment Clause of the Eighth Amendment. (Doc. No. 8 at 7–8, 11, 15–18, 20–21, 28, 42–43.) Among other things, this provision imposes a duty of prison officials to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (citations omitted). The plaintiffs allege that it is inhumane to fail to provide them "meaningful court access" while holding them "under threat of death." (Doc. No. 8 at 21, 42–43.) However, "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). "The deprivation alleged must result in the denial of 'the minimal civilized measure of life's necessities.'" *Richmond v. Settles*, 450 F. App'x 448, 454 (6th Cir. 2011) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Access to an adequate law library, regardless of the sentence a prisoner may face, is not among the basic necessities of life protected by the Eighth Amendment. *See id.* at 454–55 (quoting *Rhodes*, 452 U.S. at 348) ("The Eighth Amendment is concerned only with 'deprivations of essential food, medical care, or sanitation' or 'other conditions intolerable for prison confinement.'"). The plaintiffs' allegations therefore fail to state a plausible Eighth Amendment claim.

The plaintiffs assert a violation of their right not to be treated as slaves under the Thirteenth Amendment. (Doc. No. 8 at 7–8, 11, 15–18, 24, 28.) As convicted prisoners, however, the Thirteenth Amendment does not apply to the plaintiffs, and they do not allege that they have been

8

subjected to compulsory labor of any kind. *See* U.S. Const. amend. XIII (prohibiting slavery and involuntary servitude, "except as a punishment for crime whereof the party shall have been duly convicted); *Alkire v. Irving*, 330 F.3d 802, 816 (6th Cir. 2003) (quoting *United States v. Kozminski*, 487 U.S. 931, 943 (1988)) ("The Thirteenth Amendment prohibits 'condition[s] in which the victim is coerced by threat of legal sanction to work off a debt to a master.'"). The complaint does not support a Thirteenth Amendment claim.

The plaintiffs also assert a Fourteenth Amendment due process claim. (Doc. No. 8 at 7–8, 11, 15–18, 23, 25–26, 28–29, 45.) To the extent that the plaintiffs base this claim on the defendants' alleged failure to follow TDOC and RMSI policies, they fail to state a claim. *See Grinter v. Knight*, 532 F.3d 567, 574 (citing *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983)) ("Failing to follow proper procedures is insufficient to establish an infringement of a liberty interest."). This claim is also subject to dismissal because the plaintiffs' allegations are properly addressed as an access-to-courts claim. (*See* Doc. No. 8 at 7 ("All violations stem from defendants' acts or failures to act to provide Plaintiffs with a meaningful law library.").) "Where 'a constitutional claim is covered by a specific constitutional provision, . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *See Flakes v. Drinkert*, No. 18-1807, 2018 WL 7046897, at *2 (6th Cir. Dec. 10, 2018) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998)) (affirming dismissal of due process claim where allegations were "covered by" access-to-courts claim).

### 2. Access to Courts

Turning to the crux of the complaint, "the right of access to the courts is a fundamental right protected by the Constitution." *Swekel v. City of River Rouge*, 119 F.3d 1259, 1261 (6th Cir. 1997) (quoting *Graham v. Nat'l Collegiate Athletic Ass'n*, 804 F.2d 953, 959 (6th Cir. 1986)). But

9

Case 3:21-cv-00698   Document 10   Filed 10/29/21   Page 9 of 18 PageID #: 195

this right, while fundamental, "is not absolute." *Hill v. Dailey*, 557 F.3d 437, 439 (6th Cir. 2009) (citing *McDonald v. Smith*, 472 U.S. 479, 484 (1985)). It is "ancillary to [a lost] underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Sampson v. Garrett*, 917 F.3d 880, 881 (6th Cir. 2019) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). Thus, prisoners asserting a violation of their right of access to the courts must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered [their] efforts to pursue a legal claim." *Lewis v. Casey*, 518 U.S. 343, 354 (1996). This is referred to as the "actual injury" requirement. *See id.* at 349.

The plaintiffs fail to state an access-to-courts claim for several reasons. First, the plaintiffs allege that the actual injury requirement should not apply to death row inmates. (Doc. No. 8 at 42.) But this requirement is a threshold matter of standing, a "constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349 (citations omitted). "[I]t is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution." *Id.* Thus, when presented with a prisoner's claim for denial of access to the courts, "[i]t is for the courts to remedy past or imminent official interference with individual inmates' presentation of claims to the courts; it is for the political branches of the State and Federal Governments to manage prisons in such fashion that official interference with the presentation of claims will not occur." *Id.* That is the case regardless of the sentence an inmate faces. *See Arthur v. Comm'r, Ala. Dep't of Corr.*, 680 F. App'x 894, 898, 908–10 (11th Cir. 2017) (applying actual injury requirement to access-to-courts claim brought by death-row inmate scheduled for execution the next day).

To demonstrate actual injury, "the complaint should state the underlying claim . . . just as if it were being independently pursued, and a like plain statement should describe any remedy

10

available under the access claim and presently unique to it." *Christopher*, 536 U.S. at 417–18 (citation and footnote omitted); *see also Brown v. Matauszak*, 415 F. App'x 608, 612 (6th Cir. 2011) ("[A] plaintiff must plead a case within a case, alleging the law and facts sufficient to establish both the interference with his access to the courts, and the non-frivolous nature of the claim that was lost."). Here, however, the plaintiffs offer purely speculative lost claims. (*See* Doc. No. 8 at 19 ("No one can say what effect access to a meaningful law library over the years could have had on Plaintiffs' case."); *id.* at 44 ("Although there are numerous constitutional violations occurring at Riverbend Maximum Security Institution, as an inmate, Plaintiffs are withheld from researching and/or filing other claims due to lack of access to a meaningful law library and access to the necessary T.D.O.C./R.M.S.I. records.").)

Moreover, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. "[A] prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. As discussed above, the plaintiffs have not alleged prejudice to any specific civil rights claim. And the court takes judicial notice that both plaintiffs completed direct appeals and state post-conviction proceedings in which they were represented by counsel. *See State v. Nichols*, 877 S.W.2d 722 (Tenn. 1994) (direct appeal); *Nichols v. State*, No. E2018-00626-CCA-R3-PD, 2019 WL 5079357 (Tenn. Crim. App. Oct. 10, 2019), *perm. app. denied*, Jan. 15, 2020 (reopened post-conviction petition); *State v. Stephenson*, 195 S.W.3d 574 (Tenn. 2006) (direct appeal); *Stephenson v. State*, No. E2012-01339-CCA-R3PD, 2014 WL 108137 (Tenn. Crim. App. Jan. 13, 2014), *perm. app. denied* Sept. 19, 2014 (post-conviction). Plaintiff Nichols also completed federal habeas corpus proceedings in which he was represented by counsel. *See Nichols v. Heidle*, 725 F.3d 516 (6th Cir. 2013). And Plaintiff Stephenson is currently represented by counsel in his federal habeas

11

case in the Eastern District of Tennessee, as guaranteed by statute for death-sentenced prisoners. *See Stephenson v. Mays*, No. 3:14-cv-00414 (E.D. Tenn.); 18 U.S.C. § 3599(a)(2). At least with respect to these proceedings, the plaintiffs' legal representation "is a valid means of satisfying the constitutional obligation to provide prisoners . . . with access to the courts." *Wylie v. Bonner*, No. 2:20-cv-02593, 2021 WL 261280, at *8 (W.D. Tenn. Jan. 26, 2021) (citing *Bourdon v. Loughren*, 386 F.3d 88, 93 (2d Cir. 2004)); *see also Martucci v. Johnson*, 944 F.2d 291, 295 (6th Cir. 1991) (citations omitted) (emphasis in original) ("[A] prisoner's constitutionally-guaranteed right of access to the courts [is] protected when a state provides that prisoner with either the legal tools necessary to defend himself, e.g., a state-provided law library, *or the assistance of legally trained personnel*.").

Finally, even if the plaintiffs had identified a non-frivolous underlying claim, they do not allege that they suffered actual prejudice. "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)). The plaintiffs do not allege that they had a case dismissed or missed a particular deadline in an existing case. They do allege that the 2A law library's lack of updated resources and limited hours delayed the filing of this case—not because the plaintiffs were prevented from submitting a complaint, but because they relied on outside resources to compile the legal argument contained within the complaint. (*See* Doc. No. 8 at 30–32 (referring to work on "this brief").) The plaintiffs also allege that they suffer actual injury from the policy requiring them to conduct case research by giving another inmate a form listing specific citations. (*Id.* at 31, 36–37.) However, a prisoner's right to access the court does not include the

right "to discover grievances or to litigate effectively once in court." *Phillips*, 841 F.3d at 420 (citing *Lewis*, 518 U.S. at 354; *Hill*, 557 F.3d at 439).

In sum, the plaintiffs are subject to the well-established constitutional requirement that access-to-courts claimants suffer an actual injury. By failing to allege actual prejudice to an identifiable, non-frivolous claim, the plaintiffs do not satisfy this requirement. And their right to access the courts has been protected by the representation of appointed counsel in their past or ongoing direct appeals and habeas corpus proceedings—two of the three types of cognizable access-to-courts cases. For all of these reasons, this claim will be dismissed.

### 3. Equal Protection

The plaintiffs also assert a claim under the Equal Protection Clause of the Fourteenth Amendment. (Doc. No. 8 at 7–8, 11, 15–18, 23, 25, 28.) This Clause provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV). "It is in essence 'a direction that all persons similarly situated should be treated alike.'" *Robinson v. Jackson*, 615 F. App'x 310, 314 (6th Cir. 2015) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). But "to establish an equal protection violation, a plaintiff must establish more than differential treatment alone—a discriminatory intent or purpose is required." *Maye v. Klee*, 915 F.3d 1076, 1085 (6th Cir. 2019) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977)). And "[c]onclusory equal protection claims, without specific factual allegations, are inadequate to state a civil rights claim." *Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 345 (6th Cir. 2014) (citing *Harden-Bey v. Rutter*, 524 F.3d 789, 796 (6th Cir. 2008)).

The plaintiffs allege that the defendants prioritize opening the main library rather than the 2A library when there are not enough officers to staff both libraries at the same time. In grievance

13

responses attached to the complaint, prison officials acknowledge that the 2A library has been closed in the past "due to staff shortage," and the grievance board recommended that an officer be assigned to the 2A library "if [the prison is] not short of staff." (Doc. No. 1-3 at 3–5; Doc. No. 1-4 at 3–5.) The plaintiffs do not contest that the prison is short staffed (*id.* at 11 ("Plaintiffs . . . [are] confident a minimal investigation will prove . . . staff shortages are greater than is public knowledge.")), but they believe that the defendants use short staffing "as an excuse" to treat death row inmates less favorably than other inmates. (*See* Doc. No. 8 at 11–12.)

An equal protection claim is subject to dismissal at the initial review stage where a plaintiff does not allege "any facts to support [the] contention that [the defendants] were motivated by a discriminatory intent." *See Weatherspoon v. Bien*, No. 16-1366, 2017 WL 4765405, at *4 (6th Cir. Mar. 28, 2017) (citing *Iqbal*, 556 U.S. at 678; *Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995)). That is because, without facts to support an inference of unlawful motive, it is not enough to allege that the defendants engaged in conduct "consistent" with unlawful intent. *See Iqbal*, 556 U.S. at 680 (discussing *Twombly*, 550 U.S. at 567). Instead, the court may credit a "more likely" explanation for the defendant's action and reject the allegation of unlawful motive as implausible. *See Iqbal*, 556 U.S. at 680 (discussing *Twombly*, 550 U.S. at 567); *see also 16630 Southfield Ltd. P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (citing *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567) ("The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct.").

Considering the available explanations, discriminatory animus toward death row inmates is not a likely explanation for the defendants' decision to close the 2A law library when the prison is short staffed. Instead, the defendants likely reassign officers from the 2A library to the main

14

library because, as the plaintiffs recognize (*see* Doc. No. 8 at 22), the main library is open to the general population and therefore serves a much larger number of inmates. "At bottom, as between the 'obvious alternative explanation for the [closure of the 2A law library] and the purposeful, invidious discrimination [the plaintiffs] ask[] us to infer, discrimination is not a plausible conclusion.'" *See 16630 Southfield Ltd. P'Ship*, 727 F.3d at 506 (quoting *Iqbal*, 556 U.S. at 682) (affirming dismissal under Rule 12(b)(6)).

Finally, liberally construing the complaint, the plaintiffs mount an equal protection challenge to two policies that they claim are unique to death row inmates: the policy requiring them to conduct case research by giving another inmate a form listing specific citations (Doc. No. 8 at 36–37), and the policy requiring them to request library access a week in advance. (*Id.* at 40.) To restate, "a discriminatory intent or purpose" is required to establish an equal protection violation. *Maye*, 915 F.3d at 1085 (citing *Vill. of Arlington Heights*, 429 U.S. at 264–65). Allegations that the defendants "adopted a policy because of, not merely in spite of, its adverse effects upon an identifiable group" are "conclusory and not entitled to be assumed true." *Iqbal*, 556 U.S. at 681 (internal citations and quotation marks omitted); s*ee also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir.2009) ("The bald allegation of impermissible motive . . . , standing alone, is conclusory and is therefore not entitled to an assumption of truth."). However, courts "treat 'as presumptively invidious those classifications that disadvantage a "suspect class," or that impinge upon the exercise of a "fundamental right."'" *Maye*, 915 F.3d at 1085 (citing *Plyler v. Doe*, 457 U.S. 202, 216–17 (1982)).

Here again, the plaintiffs do not offer any factual support for their belief that these two policies are motivated by discriminatory intent. (*See* Doc. No. 8 at 8, 11–12 (alleging that the plaintiffs' constitutional rights were violated "with the deliberate intention to discriminate against

15

and deny those rights to death row inmates including [the plaintiffs]"); *id.* at 10 ("Plaintiffs were being discriminated against because Plaintiffs were sentenced to death"); *id.* at 33 ("Inmates who receive a lesser sentence for their crime have all the protection of access to courts via a meaningful law library in which to exercise their right to do their own legal research, or even represent themselves in court.").) "There is" also "no basis in law for defining death row inmates as a suspect class for purposes of the equal protection clause." *Rawls v. Sundquist*, 929 F. Supp. 284, 289 (M.D. Tenn. 1996). And for essentially the same reasons that the plaintiffs fail to state an access-to-courts claim, the challenged policies do not "burden [a] fundamental right" such that "invidious purpose may be inferred." *Maye*, 915 F.3d at 1086.

To "burden a fundamental right," a policy must "'directly and substantially' interfere with" that right. *Lyng v. Castillo*, 477 U.S. 635, 638 (1986) (citations omitted). The right of access to the courts is fundamental, but not absolute. *Swekel*, 119 F.3d at 1261; *Hill*, 557 F.3d at 439. There is no "abstract, freestanding right to a law library or legal assistance." *Lewis*, 518 U.S. at 351. "[P]rison law librar[ies] and legal assistance programs are . . . only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id.* (quoting *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). And the plaintiffs have not alleged that the challenged policies resulted in actual prejudice to an identifiable, non-frivolous claim. Therefore, the plaintiffs have not demonstrated that the challenged policies directly and substantially interfere with the right of access to the courts.

"Determining whether a complaint states a plausible claim" is "a context-specific task." *Iqbal*, 556 U.S. at 679. RMSI maintains a separate library for death row inmates, and in that context, there are obvious explanations for the challenged policies aside from discriminatory animus against death row inmates. The first policy allows these inmates to conduct research by

16

giving another inmate a form listing specific citations. The stated purpose of this policy, according to a copy of the policy attached to the complaint, is so that death row inmates (and other "segregated and close custody inmates") "may request any material available to the inmate population." (Doc. No. 1-2 at 5.) Far from being discriminatory, the likely intent of this policy is just what it says: to allow death row inmates access to the same resources as other inmates.

The second policy requires death row inmates to request law library access a week in advance. One obvious explanation for this policy is so that the prison has an opportunity to schedule the officers necessary to staff the library. Additionally, there is a copy of Building 2A's "Legal Library Usage Request Form" attached to the complaint. (Doc. No. 1-5 at 1.) The form includes a space for the Unit Manager or Designee to list any "incompatibles" the requesting inmate may have. (*Id.*) The "incompatible" check built into the request form reflects that another likely explanation for requiring death row inmates to request law library access in advance is to avoid altercations in the 2A law library and preserve institutional security. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted) ("The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security.").

In short, without factual allegations of discriminatory intent, and without a basis for the court to infer such intent, the plaintiffs' allegation that the challenged policies are motivated by purposeful discrimination is entirely conclusory and implausible. Accordingly, the plaintiffs fail to state an equal protection claim.

### III. Conclusion

For all of these reasons, the plaintiffs fail to state a claim under Section 1983. Their federal claims will be dismissed with prejudice, and any state law claims will be dismissed without

17

prejudice. The plaintiffs' requests for counsel and injunctive relief will be denied as moot, and the court will certify that an appeal in this matter would not be taken in good faith. The plaintiffs, therefore, will not be granted leave to proceed as a pauper on any appeal. 28 U.S.C. § 1915(a)(3).

An appropriate order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge